# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMAR MATTHEWS,<br><br>    Plaintiff<br><br>  v.<br><br>CITY OF PHILADELPHIA, et al.,<br><br>    Defendants | CIVIL ACTION<br><br>No. 08-2162 |

## MEMORANDUM

Plaintiff Jamar Matthews filed this § 1983 civil rights action against the City of Philadelphia, a prison work-release center, and various correctional officers. The defendants have collectively moved for summary judgment, which Matthews opposes. For the reasons that follow, the court grants the motion in part and denies it in part.

**I.    Factual allegations**

The following factual allegations are presented in Matthews's *pro se* complaint (Docket No. 4), as amended (Docket No. 35).

Plaintiff Matthews is paralyzed and confined to a wheelchair. At the beginning of the relevant time period, Matthews was an inmate at the Curran-Fromhold Correctional Facility (CFCF). He was transferred from CFCF to the Alternative Special Detention (ASD) unit in January 2008 to participate in a work release program. Soon thereafter, he

was transferred to a satellite location of ASD at 600 University Avenue ("600 University"). Matthews alleges that members of the staff at 600 University conspired against him to move him out of the facility because they could not accommodate his disability. The events undergirding this allegation unfolded as follows.

On February 21, 2008, Matthews was talking to another inmate at 600 University, Khalil Turner, at around 10:10 p.m. that evening. Matthews claims that he was asking Turner for a dollar for the vending machine, which Turner then handed to him. At that time, Correctional Officer (C/O) Bakhit claims to have seen a suspicious item passed from Matthews to Turner. Both Matthews and Turner were stopped and taken into the locker room to be strip searched. No contraband was found on Matthews, but a white Nokia camera phone, a headphone wire, and a cell phone charger were found on Turner. Matthews was served with a misconduct report on February 22 and was referred to the Disciplinary Hearing Officer (DHO).

On February 27, 2008, a disciplinary hearing was held before DHO Gonzales. Matthews denied any involvement and testified that he did not pass anything. He was found guilty by the DHO and was sanctioned with 15 days of disciplinary segregation for the misconduct classified as "major." In accord with this sanction, he was placed in what Matthews describes as a "Protective Custody Pod" at CFCF. He alleges that he was not permitted to return to the work release program even though Turner, the other party in the disciplinary incident, was permitted to return.

Matthews attached three documents to his initial complaint that appear to be copies of documents he filed through the prison grievance system. The first is a grievance form filed by Matthews on February 28, 2008, in an attempt to appeal the DHO's decision. (*See* Docket No. 4 at 7.) Nowhere in this grievance does he make any complaint about handicapped-accessible facilities or a conspiracy to transfer him out of the work release program. He claims only that "[t]he DHO did not hear my side of the story. . . . Please allow me a fair hearing where both sides can be heard." (*Id.*) The second is an "Inmate Disciplinary Hearing Appeal" Matthews filed on March 4, 2008.[1] (*Id.* at 8.) He reiterated that he wanted "a fair hearing where both sides can be heard," including the ability to call "a witness and di[s]ciplinary representation." (*Id.*) The third is another such form filed on April 4, 2008, because he claimed that, having put in appeals and grievances, "no written answer ha[d] been given." (*Id.* at 9.) In this form he begins to make accusations about his "Due Process and Eighth Amendment rights" being denied. (*Id.*) Specifically, he alleged that he could "prove [his] innocence and falsifying of the report by C/Os." (*Id.*) Furthermore, he alleged, the "write-up is being used [as] a cloud to hide the truth about a PPS [Philadelphia Prisons Systems] facility." (*Id.*)

Matthews then brought this lawsuit, which was received by the clerk on August 14,

---

[1] Matthews's complaint alleges that he filed this document on March 14, 2008 , but the date on the form is March 4, 2008. (*See* Compl. ¶ IV.b) The court will refer to the date on the document itself. Curiously, Matthews filed the appeal document prior to being told by a C/O on March 5, 2008, in response to his February 28 grievance, to file the correct appeal form and submit it to the unit manager. (Docket No. 4 at 7.)

2008, and filed on September 11, 2008, upon grant of an application to proceed in forma pauperis. He amended his complaint on October 19, 2009.

## II. Claims presented

In his amended complaint, Matthews sues a number of individuals and entities. The entity defendants are the City of Philadelphia (the "City") and the ASD Work Release Center, 600 University. The individual defendants are Sgt. Koshy, Sgt. Lloyd, DHO Gonzales, C/O Bakit, C/O Banks, and Social Worker Supervisor Heather Lockwood, all alleged to be from 600 University. Upon stipulation of the parties, all claims against Sgt. Lloyd were withdrawn, and Sgt. Lloyd was dismissed from the case by order of Magistrate Judge M. Faith Angell on October 29, 2009. (Docket No. 38.)

Although Matthews's *pro se* complaint and amended complaint are not models of clarity, they purport to bring a civil rights action pursuant to 42 U.S.C. § 1983. The court divines the following claims asserted against the respective defendants:

1. Against Koshy, Gonzales, Bakit, and Banks,
   a. conspiracy, presumably pursuant to 42 U.S.C. § 1985(3), to remove Matthews from 600 University and place him in a Protective Custody Pod at CFCF (Compl. ¶¶ V.4, V.10, VI.A.1);
   b. violation of Matthews's 8th Amendment and 14th Amendment rights by removing him from 600 University (Compl. ¶¶ V.4, VI.A.1); and
   c. negligence under state law for the same (Compl. ¶ VI.A.1);

2. Against Gonzales, a denial of due process in connection with Matthews's disciplinary proceeding (Compl. ¶¶ V.9, VI.D.3);

3. Against Lockwood, a state law claim for use of fraudulent documentation and perjury (Am. Compl. preliminary statement, ¶ 4; *id.* Statement of Claim ¶¶ 1–4);

4

4.  Against the City and 600 University,
    a.  failure to provide adequate handicapped-accessible care to Matthews under state law, the Eighth Amendment, and the Americans with Disabilities Act (Compl. ¶¶ V.3–4, VI.D.4; Am. Compl. preliminary statement);
    b.  vicarious liability for all individual defendants;

5.  Against all defendants,
    a.  a violation of the Equal Protection Clause of the Fourteenth Amendment for disparate punishment (Am. Compl. preliminary statement).

To the extent that Matthews intended to assert other claims, the court is unable to unearth them in his complaint as amended.

## III. Analysis

Before the court is defendants' motion for summary judgment as to all counts.[2] The individual and entity defendants assert a bevy of reasons why Matthews's claims should be dismissed, and for the reasons outlined below, the court grants summary judgment in defendants' favor on all counts but one.

### A. Summary judgment standard

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is considered "material" if it "bear[s] on an essential element of the plaintiff's claim." *Abraham v. Raso*, 183 F.3d

---

[2] Defendant Lockwood did not join in the motion and the claims against her will not be resolved at this time.

279, 287 (3d Cir. 1999). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 637 (3d Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In examining the record before it, the court is "required to view the facts and draw inferences in the light most favorable to the nonmoving party." *Ray v. Twp. of Warren*, 626 F.3d 170, 173 (3d Cir. 2010).

The moving party bears the burden of informing the court of the basis for its motion and identifying the portions of the record that show that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where . . . the non-moving party bears the burden of proof at trial, summary judgment is appropriate if non-movants fail to "make a showing sufficient to establish the existence of an element essential to [their] case." *In re TMI*, 89 F.3d 1106, 1116 (3d Cir. 1996) (quoting *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993)). Thus, in this case, the non-moving party, Matthews, who bears the burden of proof at trial, "must 'go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.'" *In re TMI*, 89 F.3d at 1116 (citing *Celotex*, 477 U.S. at 324); *see also* Fed. R. Civ. P. 56(c)(1).

**B.   Exhaustion of administrative remedies under PLRA**

Before the court can reach the merits of Matthews's claims, Matthews must first

6

clear a procedural hurdle raised by the Prisoner Litigation Reform Act (PLRA).[3] Under the PLRA, an action with respect to prison conditions under § 1983 or any other federal law may only be brought by a prisoner when he or she has exhausted available administrative remedies. 42 U.S.C. § 1997e(a). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Whether an inmate has properly exhausted a claim (so as to avoid procedural default) is determined by "evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances, and the waiver, if any, of such regulations by prison officials." *Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004). This requires an inmate to fully avail himself of all the procedures available to him, including grievance appeals. *Id.* at 230. Matthews can only bring his claims in this civil rights suit if he has properly exhausted his available administrative remedies through grievances and

---

[3] Although not completely clear in the record, it appears that Matthews has been released from custody. (*See* Docket No. 61.) Even if he is no longer in custody, however, because he brought the lawsuit while in custody, he is still subject to the exhaustion requirements of the PLRA. *See Abdul-Akbar v. McKelvie*, 239 F.3d 307, 314 (3d Cir. 2001) (en banc) ("Section 1997e(a) of Title 42, amended by the PLRA, requires that the plaintiff exhaust administrative remedies, but only if the plaintiff is a prisoner at the time of filing."); *see also Harris v. Garner*, 216 F.3d 970, 973 n.2, 976–77 (11th Cir. 2000) (en banc) (holding that the PLRA "covers a plaintiff who is a confined prisoner at the time the lawsuit is filed but who becomes a non-confined, former prisoner by the time judgment is entered").

appeals.

In broad terms, Matthews's claims fit into three categories. First, he brings claims related to the conduct of his disciplinary proceedings. Second, he brings claims related to his removal from the work release facility at 600 University. Third, he brings claims related to the actual conditions at 600 University with respect to handicapped-accessibility. Notably, defendants seem to argue only that Matthews has not exhausted claims "regarding the accessibility or lack thereof of the facilities at 600 University," and not that he has failed to exhaust remedies with respect to his other claims. (Docket No. 57 at 9.)

Matthews appears to have exhausted his administrative remedies with respect to the conduct of his disciplinary proceedings. He filed a grievance to appeal DHO Gonzales's decision (which turned out to be the incorrect procedure), and later filed an official appeal of the disciplinary hearing within the 5-day appeals period (which is the correct procedure). (*See* Docket No. 58, Ex. D.2 at 46–47.) Although the prison claims never to have received any appeal, Matthews has produced copies that, at the least, would allow a reasonable fact-finder to conclude that he had, in fact, exhausted his remedies with respect to the DHO decision and raised a due process claim.

With respect to his removal from the work release facility, Matthews arguably has exhausted those claims. Removal from the work release facility is alleged to have been the direct consequence of the disciplinary action taken against Matthews, and because he

8

has properly exhausted his disciplinary claims, he has properly exhausted his removal claims as well.[4] The court may proceed to the merits of these claims.

Matthews has not, however, exhausted his claims with respect to the handicapped-accessibility of the facility at 600 University. He has not produced any grievance form or appeal form that raises a claim of inaccessibility at 600 University.[5] Nowhere in the grievance logs provided by Matthews and defendants is there a record of an accessibility grievance. Therefore, Matthews's claims premised on the inaccessibility of 600 University are barred by the PLRA and summary judgment will be granted in favor of defendants on such claims. *See* 42 U.S.C. 1997e(a).

### C. Claims against individuals

#### 1. Disciplinary hearing due process claim

Summary judgment will be denied as to Matthews's claim against DHO Gonzales regarding the disciplinary hearing. Genuine issues of material fact remain on two crucial elements of the due process calculus.

Prison disciplinary hearings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply. *Wolff v.*

---

[4] Defendants have also has submitted a copy of a grievance in which Matthews "state[d] that he was sentenced to work release," but this grievance predated the events at issue in this case. (Docket No. 58 Ex. D.3.1.)

[5] Matthews has also produced "sick call slips" and other medical records that might be construed as medical grievances (See Philadelphia Prisons Policies & Procedures, Policy No. 3.F.10 at 8 (Docket No. 57-1, Ex. D.1)), but none of the documents raise a claim of handicapped-*in*accessibility at 600 University.

9

*McDonnell*, 418 U.S. 539, 556 (1974). "Due process is satisfied in an inmate's disciplinary hearing where the inmate receives four procedural protections: written notice of the charge at least twenty-four hours before the hearing; an opportunity to present witnesses and documentary evidence; an impartial tribunal; and, a written statement by the adjudicatory board describing the evidence relied upon and the reasons for reaching its decision." *Johnson v. Derose*, 2007 WL 1074507, at *40 (M.D. Pa. Apr. 4, 2007) (citing *Wolff*, 418 U.S. at 562–72) (footnotes omitted). Moreover, the Philadelphia Prison System confers the additional procedural right to request a staff member from an approved list be appointed to assist an inmate during the hearing. (Inmate Handbook (Docket No. 58 Ex. D.2 at 44).) "[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim." *Smith v. Mensinger*, 293 F.3d 641, 653–54 (3d Cir. 2002). If there is "any evidence in the record that could support the conclusion reached by the disciplinary board," then due process is satisfied. *Superintendent v. Hill*, 472 U.S. 445, 455–56 (1985).

The gravamen of Matthews's claim is that he was not afforded a chance to defend himself at the hearing before DHO Gonzales, but instead was summarily "told he was guilty before anything was said by him [Matthews]." (Docket No. 62 at 20.) He claims also to have requested (1) a hearing officer other than Gonzales; (2) the testimony of Khalil Turner; and (3) some type of representation. (*Id.*) His affidavit in opposition to

the motion for summary judgment states that DHO Gonzales "denied all request[s] without reason or written answer as to why he denied them." (*Id.* at 4.)

Here, the record shows that most of the required due process protections were accorded to Matthews. First, his own complaint alleges that he was provided notice more than 24 hours in advance of the hearing. (Compl. ¶ V.8.) Second, prior to the hearing, Matthews was interviewed by prison officials concerning the incident, and he gave a statement claiming that he had been given one dollar to get something from a vending machine by another inmate, Khalil Turner. (Docket No. 4 at 12.) Matthews also testified at the hearing that he "did not pass anything" to another inmate and responded to questions from DHO Gonzales. (*Id.* at 11; Matthews Dep. Tr. 27:11–13 (Docket No. 58 Ex. E).) Third, the only suggestion of a lack of impartiality is Matthews's own statement that he believed DHO Gonzales found against him—indeed, Matthews never actually alleges that DHO Gonzales was partial, only that he "was the sole hearing officer." (Compl. ¶ V.9.) Fourth, a written statement by DHO Gonzales was provided to Matthews, and he included an undisputed copy of the record with his complaint (Docket No. 4 at 10–14). Finally, there was sufficient evidence in the record to support the conclusion reached by DHO Gonzales.[6]

---

[6] The hearing record contains a narrative from C/O Bakhit detailing his observation of a suspicious item passed from Matthews to Khalil Turner. The two inmates were then searched, and a cellular phone was found on Turner. Matthews, for his part, gave a statement that Turner had given him money for the vending machine, and Matthews testified at the hearing that he did not pass anything. On this record, the

11

Crucially, however, one fundamental element of procedural due process may have been denied—the right to present witnesses. Moreover, Matthews may have been denied the right, conferred by the prison system, to be assisted by an approved staff member. Defendants have produced no evidence as to whether he was afforded assistance by an approved staff member or an opportunity to present witnesses. Although the only evidence of record on this point is Matthews's own statements, defendants have not rebutted his affidavit in the slightest in either their legal briefing or exhibits submitted in support of their motion for summary judgment. No affidavits from prison officials were submitted. Furthermore, in noting that (a) there was no inmate representative and (b) there were no inmate witnesses, the record of the disciplinary hearing is consistent with Matthews's affidavit. The hearing record does not state whether this was because Matthews's requests were denied, or because he waived those rights. In light of the inconclusive nature of the evidence at this stage, summary judgment is denied as to the procedural due process claim with respect to (a) the availability of assistance in representation at Matthews's disciplinary hearing and (b) the ability to present witnesses.

2. **Other claims**

Matthews's claims regarding his transfer from work release and his placement into a Protective Custody Pod at CFCF fail because he does not have a liberty interest in

---

evidence was sufficient to permit DHO Gonzales to find Matthews guilty. This, however, does not itself dispel any other due process concerns.

remaining in the general population or on work release. Although "[a] protected liberty interest in avoiding prison disciplinary sanctions can arise either from the Due Process Clause itself or from state law, . . . [n]o liberty interest traced from the Due Process Clause is implicated if the conditions or degree of confinement to which a prisoner is subjected [are] within the sentence imposed upon him and do not otherwise violate the Constitution." *Torres v. Fauver*, 292 F.3d 141, 150 (3d Cir. 2002) (internal quotation marks omitted). If "there is no state-created liberty interest, the Due Process Clause applies only if the restraints at issue exceed the prisoner's sentence 'in such an unexpected manner as to give rise to protection by the Due Process Clause of [their] own force' and do not violate any other constitutional provision." *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)) (alteration in original). Disciplinary detention in the Protective Custody Pod is the sort of confinement that inmates may reasonably anticipate receiving at some point in their incarceration, and Matthews's disciplinary transfer from work release to the pod did not implicate a liberty interest under the due process clause. *Cf. id.* Nor did the removal from work release implicate any liberty interest under state law. *See Bell v. Horn*, 762 A.2d 776, 778 (Pa. Commw. Ct. 2000) (holding that there is no liberty interest in work release created by Pennsylvania law).

Matthews's equal protection claim fails because he has not made out the elements of such a claim. Equal protection claims require a plaintiff to show purposeful discrimination that had a discriminatory effect on the plaintiff. *Millard v. Hufford*, 2011

WL 681091, at *1 (3d Cir. Feb. 28, 2011) (per curiam). Matthews has made an unsupported assertion that Khalil Turner is similarly situated and was permitted to return to work release. He argues that because they were found to have committed the same violation, his different punishment must have been the result of discrimination. "Beyond such an inference, however, [Matthews] put[s] forward no evidence that his punishment was the result of purposeful discrimination. [Matthews's] argument falls well short of establishing the purposeful discrimination necessary to make out an equal protection claim." *Cf. id.* Accordingly, the claim fails.[7]

Matthews's § 1985(3) conspiracy claims fail because he has produced no evidence from which a reasonable jury could find that a conspiracy existed among the defendants. *See Farber v. City of Paterson*, 440 F.3d 131, 133 (3d Cir. 2006) (noting that the first element of a successful § 1985(3) claim is the existence of a conspiracy) Aside from his conclusory accusations, nothing in the record reasonably leads to the conclusion that a conspiracy existed among defendants. At most, he has alleged claims against various individuals, but he has not supported a claim of conspiracy among those individuals.

Matthews's state law claims against the individual defendants are restricted by his complaint to "negligence." (Compl. ¶ VI.A.1 ("negligence under the state law")). Under Pennsylvania law, municipal employees are generally not personally liable for negligent

---

[7] To the extent Matthews attempts to rely on inmate transport forms to support his argument (Docket No. 62 at 21–23), these documents are not relevant to the inquiry and do not support an inference of purposeful, indeed any, discrimination.

14

acts, and Matthews's claims do not fall under an exception to the general rule.[8] 42 Pa.
C.S. § 8545; *Weinstein v. Bullilck*, 827 F. Supp. 1193, 1205–06 (E.D. Pa. 1993)
("Because none of the claims against [defendant] falls into one of the[] eight [exceptions],
to the extent that plaintiff's claims are based in negligence they are barred."). It appears
that the specific negligence claim Matthews asserts against defendants is for removing
him from 600 University. The only exception that could conceivably apply is the real
property exception, but because Matthews complains about removal from an allegedly
handicapped-inaccessible facility and not about any injuries sustained from the prison
building itself, it does not fall under the real property exception (indeed, Matthews seeks
to be *returned* to the very building that he alleges is inadequate for his needs). *See
Bowers v. City of Philadelphia*, 2008 WL 5210256, at *7 (E.D. Pa. Dec. 12, 2008) ("The
real property exception is not applicable . . . [if] Plaintiff does not allege that a defect in
the prison building itself caused Plaintiff's injuries or that the prison building was
'unsafe. . . .'").

Because the federal and state claims unrelated to the disciplinary hearing all fail,
summary judgment is granted in favor of the individual defendants as to those claims.

---

[8] Employees are only liable for negligent acts to the extent that the municipality is
liable. 42 Pa. C.S. § 8545. Municipalities are liable only when the claim stems from one
of eight exceptions: (1) vehicle liability; (2) care, custody, or control of personal property;
(3) care, custody, or control of real property; (4) trees, traffic controls, and street lighting;
(5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody, or control of
animals. 42 Pa. C.S. § 8542(b)(1)–(8).

### D. Claims against entities

Matthews's federal civil rights claims against the City fail because he has not made out the elements of *Monell* liability. Under *Monell*, a local government cannot be sued for an injury inflicted solely by its employees or agents under a vicarious liability theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A local government is liable under § 1983 only when its "policy or custom . . . inflicts the injury." *Id.* Unless there is a policy or custom as a "moving force" behind the alleged constitutional violation, no § 1983 action lies. *Id.* Although Matthews alleges that it is a custom of the City to deny wheel chair inmates the chance to participate in the work release program, he has adduced no evidence to support his conclusory assertion.[9] Nor has Matthews alleged any other custom or policy undergirding any of the alleged violations of his civil rights by the City. For these reasons, Matthews's § 1983 claims against the City fail, and summary judgment is granted in favor of the City.

Matthews's state law claims against the City fail because the Pennsylvania Political Subdivision Tort Claims Act (PSTCA) generally does not provide for recovery. 42 Pa. C.S. § 8541 ("Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by

---

[9] Quite the contrary, Matthews's own complaint alleges that he was sent to the work release center and was in the program for over a month until he was found to have secreted contraband in his wheelchair. (*See* Compl. ¶¶ V.1–9.) If such a policy against wheelchair-bounded inmates participating in work-release existed, Matthews has failed to explain how he was able to participate for over a month prior to being disciplined.

any act of the local agency or an employee thereof or any other person."); *see also Walker v. N. Wales Borough*, 395 F. Supp. 2d 219, 230 (E.D. Pa. 2005). Nor do his claims fall under any of the exceptions contained within the PSTCA. *See* 42 Pa. C.S. § 8542(b). Summary judgment is therefore granted in favor of the City on the state law claims as well.

Matthews's federal civil rights claims against 600 University fail because that facility, part of the Philadelphia Prison System, is not a "person" within the meaning of § 1983. *See, e.g.*, *Meyers v. Schuylkill Cnty. Prison*, 2006 WL 559467, at *8 (M.D. Pa. Mar. 7, 2006) ("[A] [p]rison is not a 'person' within the meaning of Section 1983."); *Mitchell v. Chester Cnty. Farms Prison*, 426 F. Supp. 271, 274 (E.D. Pa. 1976) (Ditter, J.) ("Defendants assert that [a] [p]rison is not a 'person' subject to suit under the federal civil rights law. I agree."). Furthermore, Matthews's amended complaint does not allege any acts or omissions by the prison aside from not being wheelchair accessible, and those claims were not properly exhausted. Finally, any state law claims against the facility are barred by the PSTCA. Summary judgment is therefore granted in favor of 600 University on all claims.

## IV. Conclusion

For the foregoing reasons, defendants' motion for summary judgment is granted in part and denied in part. An appropriate order accompanies this memorandum.